UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
EARL PATRICK,

                Plaintiff

                MEMORANDUM & ORDER

     v.                99-CV-8314 (NGG) (SMG)

LOCAL UNION NO. 282,
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, AFL-CIO,

                Defendant.
-------------------------------------------------------X

GARAUFIS, District Judge.

     Defendant Local Union No. 282, International Brotherhood of Teamsters, AFL-CIO ("Local 282") has moved for summary judgment as to plaintiff Earl Patrick's ("Patrick") claim that Local 282 unlawfully retaliated against him in refusing to adequately aid his attempt to obtain back pay that was owed him by his former employer, Triangle Sheet Metal Works, Inc. ("Triangle"). For the reasons set forth below, Local 282's motion is granted.

     Patrick originally filed this suit against Local 282 on December 20, 1999, seeking declarative, injunctive, and monetary relief for violations of various federal, state and city anti-discrimination laws. Local 282 moved for summary judgment as to all of Patrick's claims, and on June 11, 2002, the defendants' motions were granted in all but one respect. Finding that the record as to whether Patrick was owed back pay by Triangle remained unclear, this court denied summary judgment as to Patrick's retaliation claim against Local 282.

     Following the June 11 decision, Local 282 was permitted to conduct further discovery with respect to the remaining claim. Local 282 renewed its motion for summary judgment on the

1

remaining issue on December 23, 2004, and submitted additional documents to this court. Although he was represented by counsel at the time of the first decision in this case, Patrick is now proceeding *pro se*. Patrick has not opposed Local 282's motion for summary judgment or submitted any additional documents in support of his claim.

I. Factual Background

Patrick, an African-American, commenced his employment at Triangle in the 1960s, and was at all relevant times a member of Local 282. (Def. Statement of Undisputed Material Facts ("SMF") ¶1, citing Patrick Dep. at 12.)[1] Triangle was a sheet metal heating, ventilation, and air conditioning contractor, employing sheet metal workers represented by Local 282 of the Sheet Metal Workers' International Association, as well as warehousemen and drivers. (Sullivan Dep. at 28-29.) Local 282 represented the warehousemen and drivers for collective bargaining purposes under separate collective bargaining agreements ("CBA"s). (Gattus Dep. at 61-62; Def. Br. at 3, citing Gattus Decl. ¶1.)

Since 1996, Gary La Barbera has served as International Trustee of Local 282. As International Trustee, La Barbera establishes Local 282's practice and policy with respect to negotiation and enforcement of CBAs, and holds ultimate authority to file grievances pursuant to the CBAs. (La Barbera Dep. at 25-30.) Various business agents report to La Barbera, including Paul Gattus ("Gattus") and Dennis Gartland ("Gartland"). (Gattus Dep. at 6; Gartland Dep. at 13-14.) Each Business Agent has responsibility for negotiating and administering CBAs in an assigned geographical area. Business Agents may aid work in other geographical areas on an

---

[1] Citations to deposition testimony are to the last name of the depondent followed by "Dep." and the page number.

as-needed basis. (La Barbera Dep. at 36-37.) Gartland on occasion would aid Gattus with his assigned region, which included Triangle. (Def. SMF ¶2, citing Gattus Declaration ("Decl.") ¶1; Gattus Dep. at 118.)

On October 23, 1998, Patrick, who worked as a warehouseman at Triangle, had an altercation with Dennis Kagel ("Kagel"), a Caucasian Triangle driver. (Pl. Statement at 15; Gattus Dep. at 123.) Patrick asserts that Kagel assaulted him, and that Patrick himself did not respond with fists but instead only "grabbed" Kagel "by the back of the neck and shoved [Kagel's] head under [Patrick's] arm in a headlocked position," in order to "protect himself from further attack and injury." (Patrick Dep. at 29; Pl. Statement at 15.) Gattus and Gartland, having heard about the fight, visited Triangle that day in order to investigate the incident. (Gattus Dep. at 112-114.) Patrick spoke to Gattus and Gartland, and explained to them that Kagel had attacked or assaulted him. (Gattus Dep. at 115.)

Later that day, Patrick complained to Triangle's management about the assault and called the police to report the incident. The police came to Triangle, and Patrick filed a formal complaint with the officers regarding the altercation with Kagel. (Pl. Statement at 21.) The police called an ambulance, and Patrick went to a hospital, where he received three stitches over his right eye. (Pl. Statement at 20.)

On Monday, October 26, 1998, Gartland became aware that Benjamin Silverstein ("Silverstein"), Vice-President and Treasurer of Triangle, had told Joseph Sullivan ("Sullivan"), shop superintendent of Triangle, that if Patrick and Kagel would agree to reconcile their differences, neither would be fired. Patrick, however, refused to continue working with Kagel. (Patrick Dep. at 51-52; Gartland Dep. at 93.) Patrick reiterated his complaints about the alleged

assault to Gartland and to Triangle management and called the police a second time. (Pl. Statement at 22.) Later that day, Kagel was arrested by the police.[2]

On or about October 29, 1998, both Patrick and Kagel were fired, without written notice, for engaging in physical violence, and Triangle refused to reinstate either man absent an adequate demonstration of reconciliation. (Gattus Dep. at 135-36; Pl. Statement at 23-25.) Gattus reviewed the applicable CBAs between Triangle and Local 282, and concluded that under both the drivers CBA and the warehousemen CBA, physical fighting constituted grounds for immediate discharge, absent demonstration of reconciliation. (Gattus Dep. at 198-200.)

After his discharge, Patrick tried repeatedly to contact Local 282 regarding wages owed him. On one occasion, Patrick reached Gattus, but Gattus refused to speak with Patrick, instructing Patrick to speak to Gartland. Patrick also attempted to meet with Gattus or Gartland, but was unable to arrange a meeting with either of them. (Pl. Statement at 42; Gartland Dep. at 104-106; Patrick Dep. at 57-71, 169, 177.)

On July 23, 1999, Patrick wrote a letter to La Barbera, stating that Patrick had not received from Triangle "any unused vacation pay–liquidated damages pay–retroactively [sic] pay" as of the date of the letter. (Def. SMF ¶2.) Upon receipt of the letter, La Barbara assigned Gattus to look into the situation. (Def. SMF ¶ 2.) Gattus received the letter from La Barbera on or about July 29, 1999. Gattus called Patrick that same day to discuss the matter and request further information, but was not able to reach him. Gattus then telephoned Abshire, and advised

---

[2] In November 1998, Patrick received a temporary Order of Protection against Kagel. Kagel was represented by counsel in the subsequent criminal proceedings against him. Kagel ultimately pled guilty to harassment in the second degree, N.Y. Penal L. § 240.26(1) in January, 1999. At that time, the Order of Protection against Kagel became permanent. (Pl. Statement at 23.)

4

Abshire that if Patrick was owed money, he should be paid. Abshire responded that if Patrick were in fact owed the money, Abshire would cut a check for him. Afterwards, Gattus called Patrick a second time in order to report his conversation with Abshire, but again did not reach Patrick at home. (Def. SMF ¶3.)

On July 29, 1999, Patrick filed charges with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination and retaliation against both Triangle and Local 282. (Pl. Statement at 48.) On or about August 6, 1999, Triangle ceased operation, and on August 11, 1999, Triangle filed a petition for bankruptcy under Chapter 11 of the U.S. Bankruptcy code in the Bankruptcy Court for the Southern District of New York. On November 3, 1999, the case was converted to a Chapter 7 liquidation case. (Def. Br. at 4; Def. SMF ¶ 4.) Also on August 6, 1999, Local 282 received from the EEOC notice of the charge of discrimination by Patrick against Triangle, dated June 29, 1999. (Def. SMF ¶ 4.) On about September 22, 1999, Local 282 received from the EEOC a copy of a charge of discrimination by Patrick against Local 282, dated July 29, 1999. (Def. SMF ¶5.) On September 30, 1999, the EEOC dismissed Patrick's charges against both Local 282 and Triangle stating that its investigation had failed to obtain information establishing violations of the statutes. (Def. SMF ¶ 5.)

On December 21, 1999, Patrick filed his Proof of Claim against Triangle with regard to his back pay claim. (Def. SMF ¶ 6.) On September 1, 2000, Local 282 obtained in discovery in this case a copy of a Proof of Claim dated December 21, 1999, which was filed on Patrick's behalf in the Triangle bankruptcy proceeding. (Def. SMF ¶ 6.) In November 2000, Local 282 assisted six former Triangle employees to file unsecured priority claims against Triangle for back

5

pay that was allegedly owed by the company. Local 282 did not take any further steps to help former Triangle employees. (Def. SMF ¶ 7.)

Patrick alleges that Kagel assaulted him because of his race, and that he was discharged from Triangle because of his race and because he pursued criminal charges against Kagel. Patrick further alleges that Local 282 refused to help him to collect his back pay because he had opposed the assault by pursuing criminal charges against Kagel and opposed his subsequent termination by complaining to Triangle management, union officials, and the police, as well as by filing EEOC charges and civil rights suits against Triangle and Local 282. (Patrick Dep. at 236.)

## II. Legal Standards

### A. Summary Judgment Standard

Summary judgment must be entered when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, "the court must draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000). Summary judgment "is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. See Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc., 182 F.3d 157, 160 (2d Cir. 1999) (internal citations omitted). The burden then shifts to the non-movant to

"come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-movant must do more than show "some metaphysical doubt as to the material facts," id., and cannot rely solely on the pleadings. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Rather, the non-movant must produce "significant probative evidence tending to support the complaint." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968). Conclusory allegations, conjecture, and speculation are "insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).

In employment discrimination cases, district courts must be "especially chary in handling out summary judgment . . . because in such cases the employer's intent is ordinarily at issue." Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 87 (2d Cir. 1996). "Employers [and unions] are rarely so cooperative as to include a notation in the personnel file that the [adverse employment action] is for a reason expressly forbidden by law." Bickerstaff v. Vassar College, 196 F.3d 435, 447 (2d Cir. 1999) (internal citations omitted). Therefore, "[d]irect evidence of discrimination is not necessary [to satisfy summary judgment]." Carlton, 202 at 135.

**III. Discussion**

Title VII prohibits retaliation against persons who participate in any manner in any Title VII process, or who oppose practices made unlawful by Title VII. See 42 U.S.C. § 2000e-3(a).[3]

---

[3] 42 U.S.C. § 2000e-3(a) provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in

7

Title VII prima facie retaliation claims are analyzed under a three-pronged test. To make out a prima facie case of retaliation by a union, a plaintiff must show that: (1) the plaintiff was engaged in an activity protected under Title VII and known to the union; (2) the plaintiff suffered an adverse union action or decision; and (3) there was a causal connection between the protected activity and the union's action or decision. Richardson v. New York State Dept. of Corr. Servs., 180 F.3d 426 (2d Cir. 1999).[4]

A. Protected Activity

The first prong of the prima facie case of the Title VII retaliation claim asks whether the plaintiff engaged in protected activity, and whether that protected activity was known to the employer or union. Patrick engaged in protected activity by filing charges with the EEOC, initiating this lawsuit, and pursuing criminal charges against Dennis Kagel, his co-worker at Triangle. Local 282 became aware of each of these protected activities at various points.

Activities protected under Title VII include the filing of a discrimination complaint with the EEOC and informal opposition by employees to an employer's discriminatory practices. Francis v. Chemical Banking Corp., 62 F. Supp. 2d 948, 961 (E.D.N.Y. 1999). Although a typical protected activity takes the form of filing a formal complaint with the EEOC or filing a lawsuit, "Congress sought to protect a wide range of activity in addition to the filing of a formal complaint." Grant v. Hazelett Strip-Casting Corp. 880 F.2d 1564, 1569 (2d Cir. 1989). Courts

---

an investigation, proceeding, or hearing under this subchapter."

[4]The following analysis applies to Patrick's § 1981 claims as well. "The same elements constitute a claim for employment discrimination under 42 U.S.C. § 1981, the New York Human Rights Laws, and the NYC Administrative Code as under Title VII." Cheng v. New York Tel. Co., 64 F. Supp. 2d 280, 284 n.1 (S.D.N.Y. 1999).

have therefore held that the initiation of a criminal proceeding initiated by the plaintiff against a supervisor or fellow employee is also protected activity within the meaning of Title VII. DeWitt v. Lieberman, 48 F. Supp. 2d 280, 292 (S.D.N.Y. 1999) ("Pursuing a criminal proceeding against an alleged harasser is also a form of 'protected activity' for purposes of [a Title VII] retaliation claim"); Borrero v. Collins, No. 01 Civ. 6885, 2002 WL 31415511, at *14 (S.D.N.Y. 2002) (Plaintiff engaged in a protected activity when she called the police to report harassment by a co-worker.). An informal complaint to the management of the employer company also constitutes protected activity. Borrero, 2002 WL 31415511, at *14; Barcher v. New York University School of Law, 993 F. Supp. 177, 184 (S.D.N.Y. 1998). In order for a complaint to qualify as protected activity, the complainant must have a reasonable, good faith belief that a Title VII violation has occurred, but need not be correct in that belief. Manoharan v. Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988).

Patrick engaged in protected activities when he filed EEOC charges against Triangle and Local 282 on July 29, 1999, when he filed this lawsuit on December 20, 1999, and in reporting what he believed to be a racially motivated assault in the workplace to the local police and to the management of Triangle and pursuing criminal charges against Kagel in October 1998. It is undisputed that Local 282 learned of these activities at various points between October 1998 and September 1999. Patrick has therefore satisfied the first prong of the prima facie test facing Title VII retaliation claimants.

    2.    <u>Adverse Action</u>

The second prong of the prima facie test asks whether the defendant took an "adverse action" against the plaintiff. Patrick is not able to show that Local 282 took an adverse action

9

against him because Local 282 did not breach its duty of fair representation to Patrick, or otherwise engage in an adverse action against him.

An adverse action by a union is "one that affects the terms, privileges, duration, or conditions of employment. It includes any breach of the duty of fair representation, including the failure to pursue a grievance and the failure to enforce rights under a collective bargaining agreement." Agosto v. Corr. Officers Benev. Ass'n., 107 F. Supp. 2d 294, 309 (S.D.N.Y. 2000) (internal citations and quotation marks omitted). That is, while a union may take an "adverse action" against an employee by breaching its duty of fair representation to that employee, it also may do so by acting or failing to act in a way which materially and negatively impacts the terms and conditions of the union member's employment. Id. But see Nweke v. Prudential Ins. Co. of America, 25 F. Supp. 2d 203, 231 (S.D.N.Y. 1998) (holding that the Plaintiff failed to meet her burden at summary judgment as to the element of an adverse action because she did not show that the union breached its duty of fair representation.).

I thus consider both whether a rational finder of fact could conclude that Local 282 breached its duty of fair representation with respect to Patrick, and whether the union otherwise engaged in an adverse action against him. I answer both questions in the negative.

1. *Duty of Fair Representation*

Local 282 did not breach its duty of fair representation to Patrick in its handling of Patrick's back pay claim. A union breaches its duty of fair representation where its conduct with respect to an employee is "arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967). A plaintiff alleging a breach of a union's duty of fair representation must identify union conduct that violates one of the three components of the duty, which requires that

10

union act: (1) to serve interests of all members without hostility or discrimination toward any, (2) to exercise its discretion with complete good faith and honesty, and (3) to avoid arbitrary conduct.  Tomney v. Center for Disabled, 357 F. Supp. 2d 721, 735 (S.D.N.Y. 2005) (quoting Air Line Pilots Ass'n, Intern. v. O'Neill, 499 U.S. 65, 76 (1991)).

For the purposes of the definition of the duty of fair representation, "arbitrary" conduct on the part of a union should be evaluated "in light of all the circumstances," and must be "so far outside the range of reasonableness as to be irrational."  O'Neill, 499 U.S. at 67.  A wide range of reasonableness is acceptable, as long as the union acts in good faith.  Sanders v. Air Line Pilots, 473 F.2d 244, 247 (2d Cir. 1972).  Further, a "union has broad discretion in its decision whether and how to pursue an employee's grievance against an employer."  Chauffeurs, Teamsters and Helpers v. Terry, 494 U.S. 558, 567-68 (1990).  Ultimately, the "[p]laintiff bears the burden of setting forth evidence from which a rational jury could conclude that the Union's conduct rose beyond negligence to the point of bad faith."  Arteaga v. Bevona, 21 F. Supp. 2d 198, 207 (E.D.N.Y. 1998).

In the instant case, Local 282 did not breach its duty of fair representation to Patrick because the steps that Local 282 took to address Patrick's allegations that he was still owed back pay between the time they received notice of Patrick's back pay claims on July 23, 1999 and Triangle's bankruptcy filing on August 6, 1999 cannot be described as unreasonable, irrational or suggestive of bad faith.  In that two-week span, Local 282 referred Patrick's letter to Gattus, the Business Agent responsible for dealing with Triangle, who obtained an oral promise from Triangle management that they would look into Patrick's claim and pay Patrick any wages that were owed, and attempted to inform Patrick of that commitment.  Gattus apparently failed to

11

follow up with either Patrick or Triangle to ensure that Triangle had complied with its promise. In hindsight, one might wish that Local 282 had acted more diligently so that the matter could have been resolved prior to Triangle's bankruptcy filing—at which point any repayment of the wages allegedly owed to Patrick could not have been made without recourse to the bankruptcy court. However, the duty of fair representation does not require a union to act with perfect foresight, but rather to take steps reasonably calculated to fulfill its obligations to its members. See, e.g., O'Neill, 499 U.S. at 67. That obligation was fulfilled by Local 282's actions with respect to Patrick's back pay claims.

2. *Actions Otherwise Adverse*

As discussed above, acts or omissions on the part of the union apart from a breach of the duty of fair representation may also constitute "adverse action" on the part of the union. However, for substantially the reasons stated in the foregoing subsection, the acts and omissions alleged here against Local 282 are not sufficiently material to constitute adverse action.

A plaintiff suffers an "adverse employment action" if she endures a "materially adverse change in the terms and conditions of employment." See Torres v. Pisano, 116 F.3d 625, 640 (S.D.N.Y.1995) (internal citations omitted). Title VII "does not define adverse employment action solely in terms of job termination or reduced wages and benefits, and that less flagrant reprisals . . . may indeed be adverse." Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997). However, "not every unpleasant matter short of discharge or demotion creates a cause of action for retaliatory discharge." Id. (internal citations and quotation marks omitted).

A union typically possesses far less power than an employer to shape the terms and conditions of employment for an individual employee. However, the courts of this Circuit

12

consistently have held that a union's outright refusal to process an employee's grievance constitutes an adverse action. See Johnson v. Palma, 391 F.2d 203, 205 (2d Cir. 1991) (a union's abandonment of an unresolved grievance that the union has a contractual responsibility to pursue on the employee's behalf amounts to an adverse union action); Agosto, 107 F. Supp. 2d at 310 (union's failure to prosecute plaintiff's sexual harassment claim, failing to investigate her complaints against her supervisor, and failing to provide her with representation at an administrative proceeding constituted adverse union action).

In the instant case, Patrick alleges that Local 282 repeatedly rebuffed his efforts to arrange in-person meetings with his union representatives after he was terminated. Patrick further alleges that Gattus refused to speak with him and instead referred him to Gartland. (Pl's Statement at 42; Gartland Dep. at 104-106; Patrick Dep. at 57-71, 169, 177.) Local 282 also did not file a formal grievance against Triangle on Patrick's behalf, choosing instead to pursue an informal resolution of the back pay claim. However, as discussed above, it is undisputed that Local 282 took several steps to address Patrick's back pay claim upon receipt of his July 23, 1999 letter. Specifically, La Barbera forwarded Patrick's letter to Gattus, and Gattus secured a promise from Abshire that the back pay claim would be addressed by Triangle. (Def. SMF ¶3, citing Gattus Dep. at 51-56; Gattus Decl. ¶¶2, 3.) In light of these actions, neither Local 282's refusal to meet with Patrick in person to discuss his grievances nor its decision to forego a formal grievance proceeding constitutes an outright refusal to address with his grievance, as the union clearly did take meaningful affirmative steps to resolve his claim. Local 282 therefore did not take any adverse action against Patrick prior to Triangle's bankruptcy filing on August 6, 1999.

Local 282's failure to file a Proof of Claim on Patrick's behalf in bankruptcy court also

does not rise to the level of an adverse action. Other Triangle employees who had outstanding wage claims against the company did not receive assistance from Local 282 in filing Proofs of Claim until November of 2000, at which time Local 282 already was aware that Patrick had filed his own Proof of Claim on December 21, 1999.

Since Local 282 did not engage in any form of adverse action against Patrick, in the form of a breach of the duty of fair representation or otherwise, Patrick cannot establish this prong of the prima facie test for the purposes of a Title VII retaliation claim. Since the facts in the record, even drawn in the best light for Patrick, demonstrate that he has not satisfied an essential element of his prima facie case, defendant Local 282 is entitled to summary judgment on this claim.

## IV. Conclusion

For the reasons set forth above, I award summary judgment to Local 282 on the sole issue of whether Local 282 retaliated against Patrick for engaging in protected activities. The Clerk of Court is directed to close this case and to mail a copy of this decision to the pro se plaintiff.

SO ORDERED.

Dated: September 9, 2005                      /s/ Nicholas G. Garaufis
       Brooklyn, N.Y.                        Nicholas G. Garaufis
                                                 United States District Judge